USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/10/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                :

GOLDEN INSURANCE COMPANY,        :

               Plaintiff,      :

                :          20-cv-1163 (LJL)

     -v-              :

                :       OPINION AND ORDER

INGRID HOUSE, INC., ARCH SPECIALTY   :
INSURANCE COMPANY, and THE STATE  :
INSURANCE FUND,           :
                :
           Defendants.   :
                :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Golden Insurance Company ("Golden Insurance") and Defendant Ingrid House LLC ("Ingrid House") cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.

### A. General Background

Golden Insurance is a risk retention group and liability insurance company incorporated in Nevada and with its principal place of business in Scottsdale, Arizona. Dkt. No. 65 ¶ 1. Ingrid House is a New York limited liability company with its principal place of business in New York. *Id.* ¶ 2. From prior to December 17, 2015 to the present, Ingrid House has been the owner of premises located at 356 East 8th Street, New York, New York (the "Subject Premises"). *Id.* ¶ 3.

Ingrid House was engaged in a construction project (the "Project") on the Subject

Premises, to expand the Subject Premises from four stories to six.  *Id*. ¶ 18.  On or about

November 25, 2014, Ingrid House entered into a contract (the "Contract") with Elite Builders

Corp. ("Elite Builders") to complete the Project.  *Id*. ¶ 17.  Around the same time, NYJC

Construction Corp. ("NYJC") and Elite Builders entered into a Subcontract Agreement (the

"Subcontract") for the construction at the Subject Premises.  *Id*. ¶ 19.

**B.  The Insurance Policy**

On or about December 17, 2015, Golden Insurance issued Policy GIC1301201 (the

"Golden Policy") to Ingrid House to insure the Project.  *Id*. ¶ 4.  The Golden Policy provided

that: "This insurance applies to 'bodily injury' and 'property damage' only with regards to the

project at 356 E. 8th Street, New York, NY 10009."  *Id*. ¶ 5.

The "Coverages" portion of the Golden Policy provides as follows:

> SECTION I - COVERAGES COVERAGE A. BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY
> 1.  Insuring Agreement
>
> We will pay those sums that the "insured" becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies. This insurance is written on a claims-made and reported basis and applies
> only if:
>
> a. The "bodily injury" or "property damage" did not occur before the Retroactive
> Date, if any, shown in the Declarations or after the end of the policy period; and
>
> b. Claim for damages because of "bodily injury" or "property damage" is first made
> and reported to us against any "insured" during the policy period or any Extended
> Reporting Period we provide under Extended Reporting Periods; and
>
> c. The "bodily injury" or "property damage" occurred in the coverage territory.
>
> We will have the right and duty to defend the "insured" against any "suit" seeking
> those damages. However, we will have no duty to defend the "insured" against any
> "suit" seeking damages for "bodily injury" or "property damage" to which this
> "insured" does not apply. We may, at our discretion, investigate any "occurrence",
> "accident", "incident", damages, or loss and settle any claim or "suit" that may
> result. But the amount we will pay for damages is limited as described in Section

III – Limits of Insurance. No other obligation or liability to pay sums or perform acts or services is covered. We have no obligation under this insurance with respect to any claim or "suit" settled without our consent. (See Exhibit "A", Golden Policy).

*Id*. ¶ 6.

The Golden Policy additionally included two exclusions relevant to this case. Endorsement

#30 states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION EXTERIOR OPERATIONS

SECTION I- COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

2. Exclusions

This insurance does not apply to:

"Bodily injury" or "property damage" arising out of "your work" on the exterior of any building which its highest point is over three (3) stories in height. This exclusion applies to injury or damage arising out of "your work" during the process of operations and included in the "products-completed operations hazard", regardless of who has performed those operations. Operations includes, but is not limited to the construction, restoration, reconstruction, remodeling, repair, erection, demolition, installation, maintenance, cleaning or servicing of the exterior of the building which its highest point is over three (3) stories in height.
All terms, conditions and provisions of the General Liability coverage form, and its forms and endorsements apply.[1]

*Id*. ¶ 7
Endorsement #10 provides:

EXCLUSION- EARTH MOVEMENT OR SUBSIDENCE

The following exclusion is added to Paragraph 2., Exclusions of Section I- Coverage A- Bodily Injury and Property Damage Liability:

---

[1] "Your work" is defined under the Golden Policy as "[w]ork or operations performed by you or on your behalf; and 2. Materials, part or equipment furnished in connection with such work or operations" 65-2 at 38.

2. Exclusions

This insurance does not apply to:

Earth Movement or Subsidence:

"Bodily injury" or "property damage" arising out, resulting from, contributing to
or aggravated by the subsidence, settling, expansion, sinking, slipping, falling
away, caving in, shifting, eroding, consolidating, compacting, flowing, rising,
tilting or any other similar movement of earth or mud or expansion of soils,
regardless of whether such movement is a naturally occurring phenomena or is
man-made. We will have no duty to investigate or defend any suit brought against
you or pay any costs or expenses if such investigation and defense for liability,
claims, damage or loss.

*Id*. ¶ 8.

**C. The Accident**

Luis Alberto Pomboza Chicaiza ("Chicaiza") was an employee of NYJC.  *Id*. ¶ 23.  On or

about December 24, 2015, Chicaiza was working at the construction site at the Subject Premises.

*Id*. ¶ 22.  While Chicaiza was working at the job site, as the result of a wall collapse, he fell from

the fourth floor of the Subject Premises.  *Id*. ¶¶ 24-25.

**D. The Coverage Dispute**

On January 20, 2016, the law firm of Ginsburg & Misk, LLP, prior counsel for Ingrid

House, notified Golden Insurance and American Claims Management, Inc. ("ACM"), the claim

administrator for Golden Insurance, of the December 24, 2015 accident.  *Id*. ¶ 26; Ex. I.  The

letter informed Golden Insurance and ACM of the claim, stating that "[d]uring construction at

the [Subject Premises] an employee of one of the subcontractors . . . was unfortunately killed as a

result of an accident" and asked Golden to inform the insured "of their acceptance of the tender

of this claim at [its] earliest convenience."  Dkt. No. 65, Ex I at 2.  The letter attached a demand

letter from Chicaiza's estate with the request that the insurance carrier be put on notice of the

accident at the construction site.  *Id.* at 3-4.

By letter of March 4, 2016, the law firm of Smith Mazure, Golden Insurance's counsel, responded to Ingrid House's claim.  *Id.* ¶ 27; Ex. J.  Its letter invoked Endorsement #30 and stated "[a]s the work involved included the exterior of the building and the building was over three stories in height, the above referenced exclusion applies.  As such, no coverage, neither defense, indemnity, nor any benefit under the policy will be provided to Ingrid Home, LLC [sic], the estate of Louis Pomboza, Louis Pomboza, nor to any other individual or entity in reference to this matter."  *Id.* at 3.  The letter also invoked Endorsement #10 and stated that it was counsel's "understanding that this incident may have been caused by a full or partial building collapse" and to the extent that such endorsement applied, Golden Insurance would not provide coverage, a defense or indemnity.  *Id.* at 4.  The March 4, 2016 letter stated "Golden Insurance hereby denies coverage, defense and indemnity and any benefit under the policy to Ingrid Home, LLC [sic] . . ."  *Id.* at 5.  The March 4, 2016 letter further provided: "It is our understanding that a Summons and Complaint has not yet been served or filed in this matter. Should same be served or filed, please provide a copy of same so that it may be separately be [sic] evaluated".  Dkt. No. 65 ¶ 28; Ex. J at 3.

On or about December 21, 2017, Francisco Pomboza and Adam Stein, as co-administrators of Chicaiza's estate, filed an action (the "Underlying Matter") against NYJC, Elite Builders, Ingrid House and H&R Estate Realty Corp. for the injuries and ultimate death of Mr. Chicaiza in the Supreme Court of New York, Kings County, bearing index number 524610/2017 (the "Underlying Complaint").  *Id.* ¶ 29 (See Exhibit "K", Underlying Complaint).  The Underlying Complaint alleged that Chicaiza "was caused to fall down an elevator and/or stairway shaft as a result of a wall collapsing and sustained severe and permanent injuries, including among other things, blunt

force trauma and his wrongful death." Dkt. No. 65, Ex. K ¶ 51.

On January 24, 2018, Smith Mazure responded on behalf of Golden Insurance by sending a "reservation of rights/partial disclaimer" letter to Ingrid House ("January 24, 2018 Letter"). Dkt. No. 65-13. The letter "acknowledge[d] an obligation" to Ingrid House, but stated that "said defense will be subject to reservation of rights/partial disclaimer in relation to indemnity." *Id*. at 3. The January 24, 2018 Letter noted Endorsement #30 and that "[t]he work involved included the exterior of the building and it is known the building was over three stories in height," but added "it is unknown at this time whether the bodily injury set forth arose out of your work on the exterior of the building." *Id*. The January 24, 2018 Letter further stated, "[t]o the extent it is determined that the above-referenced exclusion is applicable in this matter, Golden reserves its right to deny coverage, deny a defense, and provide no indemnification or benefit under the Policy Ingrid Home, LLC [sic] nor to any other individual or entity in reference to this matter." *Id*. The January 24, 2018 Letter also noted Endorsement #10 (related to Earth Movement or Subsidence), stated its "understanding that this incident may have been cause [sic] by a full or partial building collapse," and added "[t]o the extent the above referenced exclusion applies no coverage [sic], Golden reserves its right to provide no coverage, neither defense nor indemnity, nor any benefit under the Police to Ingrid Home, LLC [sic] . . . [or] to any other individual or entity in reference to this matter." *Id*. at 4. The January 24, 2018 letter disclaimed coverage to the extent that the action sought punitive or exemplary damages. *Id*. The January 24, 2018 Letter identified the counsel Golden Insurance had selected to provide a defense to Ingrid House. *Id*. at 5. It also advised Ingrid House of its right to select counsel of its choosing "due to the existence of a reservation of rights as set forth herein." *Id*. The letter advised that Golden Insurance "will reconsider its position if new information warrants additional analysis." *Id*.

On January 29, 2018, American Claims Management ("ACM"), the third-party administrator for Golden Insurance, sent Ingrid House LLC a "reservation of rights" letter regarding coverage (the "January 29, 2018 Letter"). Dkt. No. 65 ¶ 33; Dkt. No. 65-14. The January 29, 2018 Letter advised that ACM was "in the process of investigating your claim and will defend and indemnify Ingrid House LLC under a reservation of rights." Dkt. No. 65-14 at 2. The January 29, 2018 Letter reserved Golden Insurance's rights "to disclaim liability and/or deny coverage for any reason that may exist or that may come to [Golden Insurance's] attention during its investigation." *Id*.

## PROCEDURAL HISTORY

Plaintiff filed its complaint with this Court on February 10, 2020, seeking a declaratory judgment that Ingrid House was not covered under the Golden Policy pursuant to Endorsement #30 and Endorsement #10, that Golden Insurance may withdraw from the defense of the Underlying Matter and that Ingrid House must reimburse Golden Insurance for all its fees, costs, expenses and indemnity payments in the Underlying Matter. Dkt. No. 8. In the Complaint, Golden Insurance argued that Endorsement #30 applied, because the Subject Premises were more than four stories high at the time of Chicaiza's fall and because Chicaiza fell as a result of brick or stone falling from the parapet on the roof of the building which other workers were removing and that struck and broke the platform. Golden Insurance further argued that "[t]he facts in the Underlying Matter have established that the triggering event for Plaintiffs' decedent's injuries and ensuring death are excluded under Endorsement 10 of the Golden Policy." *Id.* ¶ 33. On February 28, 2020, Plaintiff filed an Amended Complaint. Dkt. No. 21. The Amended Complaint substituted the New York Self Insurance Fund as Defendant for the State Insurance Fund, but did not change any of the allegations against Ingrid House or the relief sought against

Ingrid House.

On January 28, 2021, Golden Insurance and Ingrid House both moved for summary judgment. Dkt. Nos. 63, 67. The motions are supported by a joint statement of material facts. Dkt. No. 65. Opposition briefs were filed on February 19, 2021, Dkt. Nos. 72, 74, and reply memoranda of law were filed on February 26, 2021, Dkt. Nos. 75, 76.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation."

*F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).  Rather, to survive a summary

judgment motion, the opposing party must establish a genuine issue of fact by "citing to

particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v.

Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  To defeat a motion for summary judgment, the non-

moving party must demonstrate more than "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-

moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on

conclusory statements, or on mere assertions that affidavits supporting the motion are not

credible."  *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation

omitted).

"[W]hen multiple parties cross-move for summary judgment, . . . 'each party's motion

must be examined on its own merits and in each case all reasonable inferences must be drawn

against the party whose motion is under consideration.'"  *Century Sur Co. v. Franchise Contrst*

2016 WL 1030134, at *3 (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115 121 (2d Cir.

2001)).

New York law governs the interpretation of the insurance agreement in this case.  Under

New York law, "[a]n insurance agreement is subject to principles of contract interpretation."

*Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal

Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015)). "As

with the construction of contracts generally, 'unambiguous provisions of an insurance contract

must be given their plain and ordinary meaning, and the interpretation of such provisions is a

question of law for the court.'"  *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044,

1047 (N.Y. 2008) (quoting *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)).

"[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotations omitted). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements." *Id.* at 748. "In that regard, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'" *Id.* (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (1996)).

## DISCUSSION

Ingrid House argues that it is entitled to summary judgment, because Golden Insurance is precluded from disclaiming coverage for failure to "give written notice [of the disclaimer] as soon as is reasonably possible," as required under New York Insurance Law § 3420(d)(2).

### A. Failure to Give Timely Notice

1. General Principles

New York Insurance Law § 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. L. § 3420(d)(2).

The "literal language [of the statute] requires prompt notice of disclaimer after decision to do so, and by logical and practical extension there is imported the obligation to reach the decision to disclaim liability or to deny coverage promptly too, that is, within a reasonable time."

*Allstate Ins. Co. v. Gross*, 265 N.E.2d 736, 737 (N.Y. 1970). The law is "intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously." *First Financial Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835, 838 (N.Y. 2003); *see also Matter of Worcester Ins. Co. v. Bettenhauser*, 734 N.E.2d 745, 748 (N.Y. 2000) ("Section 3420(d) was enacted to avoid prejudice to an injured claimant who could be harmed by delay in learning the insurer's position"). "[T]he Legislature's 1975 Budget Report on the bill that ultimately became section 3420(d) noted, the purpose 'is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied.'" *Jetco Contracting*, 801 N.E.2d at 838 (quoting 30–Day Budget Report on Bills, Bill Jacket, L. 1975, ch. 775). "Failure to comply with section 3420(d) precludes denial of coverage based on a policy exclusion." *Bettenhauser*, 95 N.Y.2d at 189.

A letter reserving the insurer's rights to disclaim liability or to deny coverage does "not serve as a notice of disclaimer of liability or denial of coverage" and "has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." *Hartford Ins. Co. v. Nassau Cnty.*, 389 N.E.2d 1061, 1062 (N.Y. 1979). Its function, rather, is to protect the insurer against the claim by the insured "that the insurer had waived its right to disclaim by conducting the defense." *Id.*; *see also Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.* 9 N.Y.S.3d 264, 267 (1st Dep't 2015) (a reservation of rights allows "the insurer the flexibility of fulfilling its obligation to provide its insured a defense while continuing to investigate the claim further"); *44 Lexington Assocs. LLC v. Liberty Mut. Grp., Inc.*, 51 N.Y.S.3d 871 (2017).

"No particular time is deemed undue delay." *Gross*, 265 N.E.2d at 739. "Normally, the

question whether a notice of disclaimer of liability or denial of coverage has been sent 'as soon as is reasonably possible' is a question of fact which depends on all the facts and circumstances especially the length of and the reason for the delay" but "in the exceptional case . . . it may be decided as a matter of law." *Hartford Ins. Co.*, 389 N.E.2d at 1062-63. That may be the case, for example, where the insurer delayed providing the notice of disclaimer for two months with "absolutely no explanation for the delay." *Id.* at 1063. "The insurer bears the burden to explain the reasonableness of any delay in disclaiming coverage." *Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co.*, 904 N.Y.S.2d 52, 57 (1st Dep't 2010). Notwithstanding that "the timeliness of such a disclaimer generally presents a question of fact, where the basis for the disclaimer was, or should have been, readily apparent before the onset of the delay, any explanation by the insurer for its delay will be insufficient as a matter of law. *Id.* (citing *Jetco Contracting*, 801 N.E.2d at 839; *West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.*, 736 N.Y.S.2d 34, *lv. denied* 773 N.E.2d 1017 (2002)). Moreover, "[w]here the basis was not readily apparent, an unsatisfactory explanation will render the delay unreasonable as a matter of law." *Id.* (citing *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 56-57 (2005)). Thus, "[i]f the delay allegedly results from a need to investigate the facts underlying the proposed disclaimer, the insurer must demonstrate the necessity of conducting a thorough and diligent investigation." *Id.* (citing *Quincy Mut. Fire Ins. Co. v. Uribe*, 845 N.Y.S.2d 434 (2007); *Schulman v. Indian Harbor Ins. Co.*, 836 N.Y.S.2d 682 (2007)).

2. Application

There is no genuine question of fact here that the relief against coverage for defense and liability invoked by Golden Insurance is based on a policy exclusion and not based on the contention that the claim falls outside the scope of the policy's coverage portion. *Bettenhauser,*

712 N.Y.S.2d at 435-36 (holding that timely disclaimer was necessary when denial of coverage was predicated on a designated Exclusion). It also is not disputed that Golden Insurance did not disclaim coverage for defense and liability until filing its complaint with this Court on February 10, 2020.

Ingrid House argues that Golden Insurance was aware or should have been aware of the basis for its disclaimer of coverage by March 2016 and at least by January 29, 2018, when ACM issued its reservation of rights letter. Ingrid House further argues that by waiting until February 2020 to file an action in this Court seeking an order disclaiming coverage, Golden Insurance failed its obligation to give notice as soon as is "reasonably possible" and engaged in unreasonable delay. It relies on Golden Insurance's March 2016 Letter in which Golden Insurance took the position that "[a]s the work involved included the exterior of the building and the building was over three stories in height the above referenced exclusion applies." Dkt. No. 65-11. It also notes that Ingrid House's formal application for insurance reflected that the existing building under construction was four stories and that the construction project would involve adding two stories, Dkt. No. 65-3, and that in its second formal application to Golden Insurance, it recited that the project would involve adding two stories making it into a "6 family dwelling." Dkt. No. 65-4; Dkt. No. 65-6. It notes that, of the two quotes that Golden Insurance provided for coverage—one subject to a three-story limitation and the other not subject to the limitation—Ingrid House elected the former. Dkt. No. 65-5. As to the claim that Golden Insurance knew or should have known the basis for denying coverage by the end of January 2018, Ingrid House relies on: (1) the January 24 Letter, which stated that "[t]he work involved included the exterior of the building, and it is known the building was . . . over three stories in height," Dkt. No. 65-13; (2) a violation filed with the Building Department dated December 24,

2015, which stated that the cause of the accident was "failure to properly sore & brace a weakened structure prior to full or partial demolition" and that the cause was a failure "to adequately secure section of parapet wall during demolition work," Dkt. No. 65-19; and (3) a building violation record dated December 24, 2015, stating that the cause of the accident was "fail[ure] to ensure that demolition of existing parapet wall collapsed during demolition resulting in injury to one male worker." Dkt. No. 65-5. It also relies on an OSHA investigation report dated June 21, 2016, which reads in part as follows:

> 4th floor west side stairwell shaft:
> Employees were demolishing a masonry wall along the west side of the building. A section of wall fell on a temporary work floor decked over the stairwell shaft, and broke the floor. The employee who was working on the temporary floor fell approximately 30 feet to the bottom of the shaft.

Dkt. No. 65-18.

In any event, Ingrid House argues, Golden Insurance engaged in unreasonable delay. If, as the March 2016 Letter indicates, Golden Insurance knew as of March 2016 that the work involved included the exterior of the building then it was necessarily aware of the basis for disclaiming coverage as soon as the Underlying Matter was filed. If, by contrast, some open question remained as to whether the bodily injury alleged in the Underlying Matter arose out of "work on the exterior of the building," as reflected in the January 24, 2018 Letter, then Golden Insurance has failed to offer any explanation much less a satisfactory one, why it could not have discovered earlier the documents reflecting the nature of the work done on the Subject Premises and the cause of the accident and the basis of its disclaimer. It argues that the documents from the Building Department and OSHA would have been readily accessible in any investigation.

Golden Insurance responds with several arguments: (1) no disclaimer is required because the claim is outside the scope of the coverage under the Golden policy, Dkt. No. 74 at 14; *see*

*Century Sur Co. v. Franchise Contrast*, 2016 WL 1030134, at *8 (S.D.N.Y. Mar. 10, 2016); (2) it had no "obligation to continue its investigation after its disclaimer of coverage in March 2016 up to the date it received the suit papers for the Underlying Action in January 2018," Dkt. No. 74 at 10; (3) Ingrid House has provided no evidence that Golden Insurance was aware of the facts to disclaim coverage under Endorsement #30 "from the files of Golden Insurance, or elsewhere," Dkt. No. 74 at 9; (4) it is unknown when the Department of Buildings notes became available, the notes were issued to Elite Builders not Ingrid House, the notes are "incomplete and incomprehensible gibberish," and "[t]he Underlying Complaint is unclear as to whether Mr. Chicaiza was on the inside of the building or on the exterior of the building" when he suffered the accident and does not indicate whether the wall was an interior wall or an exterior wall; the action was brought within months of the June and July depositions in the Underlying Action which provided more information as to how and where the accident occurred, *id.* at 10-13); (5) Golden Insurance has not waived its right to disclaim by providing a defense, *id.* at 11, and (6) "[n]either the issuance of the reservation of rights on January 28, 2018 nor the institution of this declaratory judgment action is a disclaimer of coverage." *Id.* at 8. The Court takes each argument in turn.

Golden Insurance's first argument is that no disclaimer was necessary because a claim arising out of work performed on the exterior of the Subject Premises falls outside the scope of the insurance policy. "A disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy . . . [but] a timely disclaimer pursuant to Insurance Law § 3420(d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion." *GPH Partners, LLC v. Am. Home Assur. Co.*, 929 N.Y.S.2d 131, 132 (1st Dep't

2011) (quoting *Markevics v. Liberty Mut. Ins. Co.,* 761 N.E.2d 557, 559-60 (N.Y. 2001)).[2]  The law thus draws a distinction between the denial of coverage when a claim does not fall within the scope of a policy and as to which the insurer has no obligation either to investigate or to timely disclaim and a claim that falls within the policy's scope but is excluded by language in the insurance contract or an endorsement to it.

Based on the plain language of the Golden Policy, Golden Insurance's arguments as to why it should be relieved of an obligation to defend or indemnify fall into the latter category (as the result of an exclusion) and not into the former.  The Golden Policy carefully distinguishes between the language defining the scope of the policy and the exclusions from it.  The Golden Policy characterizes itself as "Commercial General Liability Coverage."  Dkt. No. 65-2 at 2.  It extends only to the Named Insured, defined as Ingrid Home LLC, and the persons identified in Section II of the Golden Policy headed "Section II-Who Is An Insured."  *Id.* at 19-20.  The coverage extends only to "those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  *Id.* at 4.  The Golden Policy then sets forth the liabilities to which the policy "applies" and those which are "excluded" from coverage.  The Golden Policy defines itself as "claims-made" insofar as "[i]t provides coverage only for injury or damage occurring after the policy retroactive date (if any) shown on your policy and only if the incident is reported to your insurer prior to the end of the policy period."  *Id.* at 41.  The Golden Policy "applies only if: a. The 'bodily injury' did not

---

[2] Golden Insurance relies upon *Franchise Contractors*, in which the court stated that it "need not decide whether the coverage was timely claimed, because it has concluded coverage does not exist," 2016 WL 1030134 at *13, and then applied principles of waiver.  But Golden Insurance makes no argument here why the language of the Golden Insurance policy should not be construed, as it plainly reads, to provide that the unavailability of insurance for exterior work is a result of an exclusion from coverage as opposed to the result of the initial scope of coverage.

occur before the Retroactive Date, if any shown in the Declarations or after the end of the policy period; and b. Claim for damages because of 'bodily injury' or 'property damage' is first made and reported to us against any 'insured' during the policy period or any Extended Reporting Period we provide under **Extended Reporting Periods**; and c. The 'bodily injury' or 'property damage' occurred in the coverage territory." *Id.* at 4.  The insurer has certain rights (as well as duties) as to claims to which the policy applies, including the right to "assume charge of the settlement or defense of any claim or 'suit' against the 'insured' seeking damages to which this policy applies and to which no Other Insurance applies." *Id.* at 39; *id.* at 4.

After setting forth the scope of the policy (i.e., general commercial liability for bodily injury and property damage, to the insureds, for the policy period), the Golden Policy then sets forth a number of "exclusions," including, inter alia, exclusions for losses arising out nuclear hazardous properties, *id.* at 46, or terrorist attacks, *id.* at 50.  Endorsement #10 and Endorsement #30, upon which Golden relies, are defined as "exclusions."  The exclusions include certain claims for bodily injury and property damage that are excluded from the policy.

Golden Insurance's argument for why the exclusions set forth in Endorsement #10 and Endorsement #30 go only to the scope of the policy and do not implicate a duty to investigate or provide timely notice conflates the language of Section 1 of the Golden Policy defining the "Insuring Agreement" with Section 2 of the Golden Policy headed "Exclusions."  Section 1 contains the language that the policy applies only to "'bodily injury' or 'property damage' to which this insurance applies" and then sets forth the three criteria for determining whether a claim falls within the scope of the Insuring Agreement. *Id.* at 4.  Section 2 begins "This insurance does not apply to" before then listing the exclusions. *Id.*  Golden Insurance's argument is that because the Insuring Agreement states that Golden's obligations extend only to

bodily injury and property damage to which the insurance applies and because Section 2 lists the bodily injury and property damage to which the insurance does not apply, every exclusion goes to the scope of the insuring agreement and should not be treated as an exclusion.

This argument is inconsistent with the plain language and structure of the agreement and would lead to absurd results. The language Golden Insurance points to in Section 1 goes to the coverage terms of the policy and reflects the scope of the Insuring Agreement itself. Section 2, of which Endorsement #10 and Endorsement #30 are a part, go to policy exclusions -- occurrences that fall within the scope of the coverage but nonetheless are excluded. That is why they are referred to as "exclusions". Endorsement #10 is titled "Exclusion – Earth Movement or Subsidence" and Endorsement #30 is titled "Exclusion – Exterior Operations." Thus, Golden Insurance's efforts to have the Court treat the Endorsements as core components of the policy, rather than as exclusions, for purposes of Section 3420(d) fails based on the plain language of the Policy.

Furthermore, Golden Insurance's argument would lead to absurd results. Its interpretation would eliminate New York law's requirements with respect to exclusions. Taking its argument to its necessary and logical conclusion, an insurer would have no duty to investigate any exclusion, because every exclusion, by definition, would go only to scope and not to exclusion from scope. No duty to provide timely notice would ever arise. Moreover, such interpretation would defeat the right to defend, because the determination whether some event falls within an exclusion frequently can be made only after the fact. Therefore, Golden Insurance's first argument is rejected.

Golden Insurance argues, second, that it had no "obligation to continue its investigation after its disclaimer of coverage in March 2016 up to the date it received the suit papers for the

Underlying Action in January 2018." Dkt. No. 74 at 10. This argument is correct as far as it goes. However, while it excuses Golden Insurance from any obligation to investigate during the period from March 2016 to January 2018 before the Underlying Complaint was filed, it does not excuse Golden Insurance's delay from January 2018 through February 2020 after that complaint was filed. *See Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F. Supp. 3d 348, 351 (E.D.N.Y. 2020) ("The disclaimer obligation arises when 'the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage.'") (quoting *Country-Wide v. Preferred Trucking Servs. Corp.*, 6 N.E.3d 578 (N.Y. 2014)); *Those Certain Underwriters at Lloyds, London v. Gray*, 856 N.Y.S.2d 1, 1 (1st Dep't 2007) ("The reasonableness of the timing of a disclaimer is measured from the date when the insurer knew or should have known that grounds for the disclaimer existed.").

Golden Insurance's third and fourth arguments challenge the assertion that it had sufficient facts to disclaim coverage in January 2018 or should have discovered such facts earlier than the filing of its lawsuit in this case. It argues that it did not have a basis to disclaim liability until June 2019 when the corporate representative for Ingrid House and Elite Builders testified in the Underlying Action that the accident occurred while demolition work was being done on an exterior wall and July 2019 when the structural engineer on the project testified that the accident happened when work was being done on the exterior of the building. Dkt. No. 71 at 21-23. Golden Insurance's argument, however, runs squarely against its own arguments for summary judgment as well as against the law under Section 3420(d). In its argument for summary judgment, Golden Insurance argues that the accident occurred when "respondent failed to ensure that demolition of existing parapet wall collapsed during demolition resulting in injury to one male worker" and that the accident was caused by the "failure to properly sore and brace a

weakened structure prior to full or partial demolition" and "[t]he respondent failed to adequately secure section of parapet wall during demolition work'" and then quotes the dictionary to the effect that a parapet wall is a "low wall or railing to protect the edge of a platform, roof, or bridge," i.e., it is exterior. Dkt. 71 at 20. But the language it quotes is from the December 24, 2015 violation filed with the Building Department and the December 24, 2015 building violation. Golden Insurance cannot have it both ways. If the December 24, 2015 filings are sufficient to establish that Exclusion #30 applies and to remove any question of fact then they also were sufficient to provide a basis for Golden Insurance to have disclaimed liability.

Golden Insurance argues that there is no evidence that it knew of the Building Department's filings prior to January 2018 or indeed of when those filings became available to it. Dkt. No. 74 at 5-6. But that argument has the burden backwards. In March 2016, Golden Insurance knew enough about the accident to disclaim liability based on Exclusion #30. Golden Insurance does not identify any facts contained in the complaint in the Underlying Matter or that arose after March 2016 that would not have made that conclusion equally applicable to Ingrid House's claim based on the Underlying Matter. As important, "[t]he insurer bears the burden to explain the reasonableness of any delay in disclaiming coverage." *Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co.*, 904 N.Y.S.2d 52, 57 (1st Dep't 2010). Leaving aside that "the basis for the disclaimer was, or should have been, readily apparent before the onset of the delay," *id.*, even "[i]f the delay allegedly results from a need to investigate the facts underlying the proposed disclaimer, the insurer must demonstrate the necessity of conducting a thorough and diligent investigation." *Id.* (citing *Uribe*, 845 N.Y.S.2d 434 (2007); *Schulman v. Indian Harbor Ins. Co.*, 836 N.Y.S.2d 682 (2007)). The Golden Policy gave Golden Insurance broad rights in the event of an occurrence or accident to obtain from Ingrid House authorization "to obtain records and

other information" and Ingrid House's assistance "in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance applies" as well as the right to cooperation in the investigation of a claim. Dkt. No. 65-2 at 25. In addition, Golden Insurance both had a duty to investigate, *see, e.g.*, *Plotkin v. Republic-Franklin Ins.* Co., 113 N.Y.S.3d 133, 138 (2d Dep't 2019) ("[A]n explanation will be inadequate as a matter of law unless the delay is excused by the insurer's showing that its delay was reasonably related to its completion of a thorough and diligent investigation into issues affecting is decision whether to disclaim coverage.") (quoting *Stout v. 1 E. 66th St. Corp.*, 935 N.Y.S.2d 49, 54 (2d Dep't 2011)), and in the January 29, 2018 Letter stated that it would be investigating. Even if it needed the documents from the Buildings Department and did not have them, and even if it needed the information that was relayed in the depositions, to confirm that Exclusion #30 applied, it has submitted no declaration or affidavit or any evidence why it could not have gotten that information earlier. That is fatal. *See Stout*, 935 N.Y.S.2d at 54 ("[W]hat is most important is not the precise length of [the insurer's] delay, but its explanation for that delay."); *Jetco Contracting*, 801 N.E.2d at 840 ("One thing is clear: that it is the responsibility of the insurer to explain its delay.").

Next, Golden Insurance argues that it has not waived its right to disclaim by providing a defense. Dkt. No. 74, at 11. That argument is correct so far as it goes, but it does not go very far. Ingrid House's claim on this motion is not that Golden Insurance "waived" its rights to disclaim, much less that it did disclaim by providing a defense pursuant to a reservation of rights. Its argument is that Golden Insurance failed to provide a timely disclaimer under the New York Insurance Law, and thus may not now issue a disclaimer. That is not a matter of waiver. *See KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 15 N.E.3d 1194, 1197-98 (N.Y. 2014)

("Compared to traditional common-law waiver and estoppel defenses, section 3420(d)(2) creates a heightened standard for disclaimer that 'depends merely on the passage of time rather than on the insurer's manifested intention to release a right as in waiver, or on prejudice to the insured as in estoppel.'") (quoting *Gross*, 265 N.E.2d at 739 (N.Y. 1970)). It also is not an argument based on waiver from having defended the lawsuit. An insurer can both disclaim coverage and provide a defense pursuant to a reservation of rights. By doing so, it protects itself against a claim for bad faith denial of coverage and preserves its rights to later recoup defense costs upon a determination of non-coverage while at the same time making clear its position to its insured and permitting the insured to bring a declaratory judgment action to settle the issue of coverage. *See Century Surety Co.*, 2016 WL 1030134, at *5 ("New York law permits insurers to provide their insureds with a defense subject to a reservation of rights to among other things later recoup their defense costs upon a determination of non-coverage") (quoting *Maxum Indem. Co. v. A One Testing Labs., Inc.*, 2015 WL 8492756, at *4 (S.D.N.Y. Dec. 10, 2015)). In this case, Golden Insurance did not do so. It provided a defense pursuant to a reservation of rights. But it did not provide a timely notice of disclaimer. It thereby lost the right later to disclaim liability.[3]

Finally, Golden Insurance argues that neither its reservation of rights letter nor this lawsuit constitutes a disclaimer and therefore that Section 3420(d)(2) "has no bearing" because it has not issued a disclaimer of coverage to Ingrid House but is continuing to provide coverage. Dkt. No. 74 at 13. Golden Insurance is right that the January 24 and January 29, 2018 Letters do not constitute notices of disclaimers. That is the point. The two letters do not satisfy Golden

---

[3] Golden Insurance also characterizes Ingrid House's argument as that "[b]y providing a defense in the Underlying Action . . . Golden Insurance should be estopped from having this Court enter a judgment in Golden Insurance's favor." Dkt. No. 74 at 7. The Court does not read Ingrid House's argument in that manner.

Insurance's statutory responsibilities to disclaim.

Golden Insurance's argument that this lawsuit does not constitute a notice of disclaimer and that therefore Section 3420(d) has no bearing is overly facile. Through this lawsuit, Golden Insurance is seeking not only the right to disclaim coverage but also reimbursement for all of the "fees, costs, expenses and indemnity payments" it has expended by providing a defense. Dkt. No. 21 ¶ 30. That is a disclaimer. It seeks the right, based on the exclusions, not to cover the defense costs and liability otherwise covered by the insurance policy. Whether it seeks to do so by letter served before the declaratory judgment action or by declining coverage after bringing a declaratory judgment action, its obligation was the same—to timely notify Ingrid House that it was declining coverage. Its position, if accepted, thus would render Section 3420(d)(2) a dead letter. An insurer, seeking to disclaim coverage but having not provided timely notice of that decision, could avoid the requirements of Section 3420(d)(2) and the need to conduct an investigation upon receiving notice of a claim by the expedient of filing a declaratory judgment action in court and then, only after having received a declaration in its favor without the Court having considered Section 3420(d)(2), disclaiming coverage.

The language of Section 3420(d)(2) and the case law under it do not admit of such an incongruous result. Black's Law Dictionary, *Disclaimer* ("A statement that one is not responsible for or involved with something, or that one has no knowledge of it."). Golden Insurance's argument is foreclosed by the decision of the New York Court of Appeals in *Hartford Insurance Co.,* 389 N.E.2d at 1029. In that case, the insured made a claim under an automobile liability insurance policy more than 45 months after the date of the accident for which it sought coverage and "on the eve of trial." *Id.* at 1031. "Rather than sending any notice of disclaimer of liability or denial of coverage to the insured, the insurer instead commenced [an]

action seeking a declaration of its obligations under the policy . . ., some two months after it first received notice of the accident." *Id.* at 1029. "No explanation whatsoever was given for this two-month delay by the insurer." *Id.* The Court held that "[a]s for the commencement of this action, even assuming *arguendo* that it could serve as a notice of disclaimer of liability or denial of coverage, . . . where, as here, no explanation is offered for the delay in disclaiming liability or denying coverage, a delay of two months is unreasonable as a matter of law." *Id.* It concluded, "hence the insurer may not disclaim liability or deny coverage in this case." *Id.* at 1029-30.[4]

Courts thus routinely entertain Section 3420(d)(2) arguments in response to motions by insurers for declaratory relief. *See e.g.*, *Gross*, 265 N.E.2d at 266 (N.Y. 1970) (rejecting argument that by insurer that by bringing declaratory judgment action as to its rights, "it has never disclaimed and it is not obligated to do so now" and "that the instant action for a declaratory judgment is its choice and the proper mode for determining whether it has a right to disclaim"); *N.Y. Univ. v. First Financial Ins. Co.* 352 F.3d 653 (2d Cir. 2003) (Section 3420(d)(2) invoked as a defense to a declaratory judgment action). They also entertain such arguments in response to claims by insurers for recoupment of defense costs expended pursuant to a reservation of rights. *See, e.g.*, *Loeffler v. Sirius Am. Ins. Co.* 923 N.Y.S.2d 550 (2d Dep't. 2011). Golden Insurance has provided no reason that the Court should depart from that practice and precedent in this case.

Golden Insurance's delay thus is unreasonable as a matter of law. By at least January

---

[4] In dissent Justice Jasen argued that it was "most unfair" to require the insurer to make a decision to disclaim in less than two months when the insured waited "nearly two years to notify the insurer of the existence of the claim" and noted that "if the insurer errs in its decision to disclaim coverage, a possibility enhanced by the necessity to conduct a hasty investigation, it will be subjected to an action to compel it to defend." *Id.* at 1031 (Jasen, J., dissenting). Those arguments, which were rejected by the Court of Appeals, are similar to the arguments Golden Insurance makes here.

2018 it knew of the basis for disclaimer on Endorsement #30.  It did not issue a disclaimer then but waited over two years.  It also has submitted no evidence that would explain or justify its delay or demonstrate that it could not have received the information upon which it bases the disclaimer earlier.  It therefore cannot rely on Endorsement 30 as a basis for disclaiming liability for defense costs and indemnification.  *See N.Y. Univ.*, 322 F.3d at 756 ("New York courts seem to be in general agreement that a delay in notification by an insurer is unreasonable as a matter of law when the delay is both two months or longer *and* unexplained"); *Jetco Contracting*, 801 N.E.2d  at 839 (unexcused delay of 48 days is unreasonable); *Hartford Ins. Co.*, 389 N.E.2d 1061, 1062 (N.Y. 1979) (unexplained delay of 62 days was unreasonable); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Isr.*, 900 F. Supp. 641, 649 (E.D.N.Y. 1995); *U.S. Underwriters Ins. Co. v. Held Bros., Inc.*, 1998 WL 355425, at *5 (S.D.N.Y. June 30, 1998).

The same is true for Endorsement #10.  Golden Insurance reserved its rights under Endorsement #10 in the January 24, 2018 Letter, but did not disclaim at any point up until this lawsuit.  Thus, for the same reasons as Endorsement #30, Golden Insurance did not disclaim within a reasonable time.

## CONCLUSION

For the foregoing reasons, Ingrid House's motion for summary judgment is GRANTED and Golden Insurance's motion for summary judgment is DENIED.


SO ORDERED.

Dated: May 10, 2021
      New York, New York                          _____
                                                              LEWIS J. LIMAN
                                                        United States District Judge